```
                   UNITED STATES DISTRICT COURT
                            FOR THE
                      DISTRICT OF VERMONT
```

REED VAN BILLIARD,             )
     Plaintiff,                )
                               )
     v.                        )    Docket No. 2:09-CV-78
                               )
FARRELL DISTRIBUTING CORPORATION, )
DAVID M. FARRELL,              )
and RICHARD N. GILL, JR.,      )
     Defendants.               )

## Opinion and Order

Plaintiff Reed Van Billiard ("Van Billiard") sues Farrell Distributing Corporation ("the Company"), its President David M. Farrell ("Farrell"), and Richard N. Gill, Jr., a former Vice-President and Treasurer of the Company ("Gill") (collectively "Defendants"), on his own behalf and on behalf of a class of others[1] for breaches of fiduciary duty regarding the Farrell Distributing Corporation Money Purchase Pension Plan and Trust ("Plan"). Specifically, Van Billiard alleges that Defendants violated fiduciary duties dictated by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1104(a), 1106(b), and 1105(a).

The amended complaint contains three counts. Van Billiard alleges that Defendants breached their duties in two ways. First, Defendants failed to properly allocate and diversify the Plan assets. Second, Defendants allowed Defendant Gill, who was

---

[1] This class is not yet certified.

a Plan fiduciary, to cash out his portion of the Plan assets based on Plan terms that Defendants changed approximately two months later, thereby permitting him to value his distribution amount at a higher amount than Plan members still enrolled. Third, Van Billiard requests equitable relief.

Defendants move to dismiss Counts I and II for failure to state a claim upon which relief may be granted.[2] In addition, Defendants contend that Van Billiard's alleged injury is too speculative to confer Article III standing, so the court should dismiss Count I for this reason as well. Furthermore, Defendants argue that Count III should also be dismissed because it is a remedy, not a complaint, and because the Plaintiff has an adequate remedy under Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2).

For the reasons that follow, the Motion to Dismiss the Amended Complaint (Doc. 29) is DENIED with respect to Counts I and II and GRANTED with respect to Count III.

## I. **Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*,

---

[2] Defendants filed an earlier Motion to Dismiss (Doc. 11) the Complaint prior to Van Billiard's filing of his amended complaint. They relied on the same and additional reasons in their Motion to Dismiss the Amended Complaint.

129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts Van Billiard's factual allegations in the amended complaint as true for purposes of considering the Motion to Dismiss, drawing all reasonable inferences in his favor. *See Natural Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (citing *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000)).

In or around 1981, the Company adopted the Plan for eligible Company employees and, in or around 2002, the Company amended the Plan. The investment of Plan assets was subject to direction by the Company. Under ERISA, the Company, along with Defendants Farrell and Gill, had fiduciary obligations with regard to the Plan, including an obligation to administer the Plan for the exclusive benefit of the Plan and all its participants, and an obligation to cause the assets of the Plan to be prudently invested, including a duty to properly allocate and diversify the Plan assets.

Van Billiard alleges first that, despite these fiduciary duties as dictated by ERISA, Defendants failed to properly allocate and diversify the Plan assets and otherwise breached their duties to the Plan and the Plan participants and, as a result, the Plan and its participants have suffered losses exceeding $9,000,000.00. Instead, Van Billiard claims Defendants selected a Plan investment portfolio in which more than 90% of

the assets were invested in equities, with only 10% in fixed assets and, of the 90% in equities, Defendants invested exclusively in volatile, small-cap environmentally friendly ("green") companies. Van Billiard alleges that since December 31, 2007, when the Plan had a value of over $25,000,000, the Plan's portfolio lost more than 60% of its value (approximately $16,000,000) as of the initiation of this action as a direct result of Defendant's failure to diversify the Plan assets.

Second, Van Billiard alleges that Defendants allowed Defendant Gill, who was a Plan fiduciary and "a highly compensated employee" and Plan participant, to cash out his Plan assets based on a valuation system that overvalued his entitlement and was unfair to the remaining Plan participants even though Defendants knew they would soon announce an amendment to the Plan changing this valuation system. (Am. Compl. ¶ 5.) Van Billiard claims this change precludes participants from "reaching back" in time to value the Plan and their own distribution amounts at a potentially higher amount. (Am. Compl. ¶ 24.) Van Billiard asserts that he, the Plan, and others similarly situated are entitled to recover all losses incurred as a result of the alleged fiduciary breaches, and an award of interest, costs, and attorneys' fees pursuant to § 502(g)(1) of ERISA.

Finally, relying on § 502(a)(3) of ERISA, Van Billiard seeks

an order removing each of the Defendants as fiduciaries under the Plan, appointing new fiduciaries for the Plan, and/or enjoining Defendants from further breaches to ensure further compliance with the Plan documents and with ERISA in the future.

**II. <u>Analysis</u>**

    A. <u>Exhibits</u>

In making its determination of whether to grant the Motion to Dismiss, Van Billiard urges the Court to exclude and refuse to consider all of the extrinsic evidence that Defendants submit, except for the Summary Plan Description, the October 9, 2008 Plan amendment letter, and the Plan itself, in the context of a motion to dismiss. This places at issue for exclusion the Portfolio Appraisal (Ex. 3), 2007 Form 5500 (Ex. 4), and 2006 Form 5500 (Ex. 5). Van Billiard argues that, pursuant to Federal Rule of Civil Procedure 12(d), Defendants' Motion to Dismiss the Amended Complaint must be converted into a motion for summary judgment. In such case, Van Billiard seeks leave to conduct additional discovery, work with his expert witness(es), schedule and take depositions, and otherwise prepare a full response to Defendants' Motion.

    Rule 12(d) provides that,

> [i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). "The decision of whether to convert a motion to dismiss into a motion for summary judgment is within the court's discretion . . . ." *Ansonia Tenants' Coal., Inc. v. Ansonia Assocs.*, 163 F.R.D. 468, 470 (S.D.N.Y. 1995) (citing *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 92 Civ. 9166, 1994 WL 494902 at *2 (S.D.N.Y. Sept. 9, 1994), *aff'd*, 60 F.3d 810 (2d Cir. 1995).

Defendants rely on *Custer v. Southern New England Telephone Co.*, No. 3:05-CV-1444, 2008 WL 222558 (D. Conn. Jan. 25, 2008), to argue that, in determining the sufficiency of a plaintiff's claim on a Rule 12(b)(6) motion, a court may consider--without converting the motion to one for summary judgment--

> "the factual allegations in plaintiffs' amended complaint, which are accepted as true;" ". . . documents attached to the complaint as an exhibit" or incorporated therein by reference; ". . . matters of which judicial notice maybe [sic] taken;" or, finally, ". . . documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit."

*Id.* at *1 (*citing Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

Each of the exhibits at issue here meets at least one of these four criteria, and the authenticity or accuracy of the documents is not subject to reasonable dispute. Exhibit 3 was a document "in plaintiff['s] possession" and "of which plaintiff had knowledge and [on which plaintiff] relied . . . in bringing suit." *Id*. Exhibits 4 and 5 are publicly filed documents of

6

which the Court may take judicial notice.  Therefore, Van Billiard was essentially on notice that these documents might be used.  The fact that a

> plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since . . . the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason-requiring notice so that the party against whom the motion to dismiss is made may respond-that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions.  Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991).  Thus, in this case, it is fair to consider these exhibits without converting the Motion to Dismiss to one for summary judgment.

    B.    <u>Failure to State an ERISA Claim in Count I</u>

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  *Twombly* provides that a pleading that only gives "a formulaic recitation of the elements of a cause of action will not do."  *Twombly,* 550 U.S. at 555.  Instead, "the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level'" for his complaint to survive dismissal.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87,

98 (2d Cir. 2007) (quoting *Twombly,* 550 U.S. at 555). Plaintiffs must demonstrate that their claims are not just possible, but plausible. *Twombly*, 550 U.S. at 556.

"Two working principles underlie . . . *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S.Ct. at 1949-50 (internal citations omitted). Determining whether a complaint survives a motion to dismiss requires the court to make a "context-specific" analysis and "draw on its judicial experience and common sense." *Id.* at 1950 (internal citations omitted).

Here, Van Billiard alleges in Count I of his amended complaint that ERISA § 404 provides the fiduciary diversification standard that governs the administration of each ERISA pension plan. The plaintiff's burden is to demonstrate a failure to "diversif[y] the investments of the plan so as to minimize the risk of large losses." 29 U.S.C. § 1104(a)(1)(C). To state a cognizable legal claim under ERISA § 404(a)(1)(C) for breach of the duty of diversification, a plaintiff need only allege facts sufficient to state a plausible claim that the defendant had a duty to "diversify[ ] the investments of the plan so as to minimize the risk of large losses," the defendant breached that duty, and that the breach caused the Plan to suffer the loss

8

claimed.  29 U.S.C. § 1104(a)(1)(C).

Here, Van Billiard alleges that "[o]ver 90% of the Plan assets were invested in equities, with only 10% in fixed assets." (Am. Compl. ¶ 20(a).)  This is not a "naked legal conclusion" and does contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

Additionally, Defendants argue that Van Billiard's Count I claim must be dismissed because he does not allege facts sufficient to show that the Plan's decrease in value was caused by Defendants' failure to diversify the investments of the Plan assets.  As Defendants point out, there were significant losses suffered by the entire global economy.  However, Van Billiard alleges that

> as a direct result of the Defendants' failure to diversify the Plan assets, as of the initiation of this action, the Plan's portfolio has lost in excess of 60% of its value. . . .  Although the global economy has suffered in 2008 and 2009, and although it might be expected that a portfolio would decrease in value during this recent time frame, a properly diversified portfolio, as required under ERISA, would have resulted in a much less substantial loss. . .[,] a 25%-30% loss (or less). . . .

(Am. Compl. ¶¶ 21-22.)  Accepted as true, this amounts to a plausible claim.  Defendants emphasize that there is an "obvious alternative explanation" for the Plan's decrease in value.  However, at this early stage of litigation, a plaintiff need only articulate a plausible claim.  Thus, Van Billiard meets the pleading standard for Count I.

9

C. <u>Standing for Count I</u>

Regarding standing, to demonstrate "a constitutionally sufficient injury-in-fact, the asserted injury must be concrete and particularized as well as actual or imminent, not conjectural or hypothetical." *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 118 (2d Cir. 2009) (internal citation omitted). The standing issue here consists of whether Van Billiard will actually suffer any injury as changes in the stock market may result in the Plan portfolio rebounding before he withdraws his Plan account assets.

Defendants attempt to analogize this case to *Kendall* to argue that the Plaintiff's injury is not the actual, imminent injury required to show an injury-in-fact for Article III standing. The plaintiff there alleged that the current plan violated ERISA and sought revision of the plan. She alleged that her employer "deprived her of her right to a plan that complies with ERISA, [a] deprivation[] she contend[ed] occurred as a result of [her employer's] breach of its fiduciary duty to comply with ERISA. This argument is obviously circular." *Id.* at 121. In *Kendall* the plaintiff claimed that "amending the Plan [would] increase her benefits by an as-yet-to-be-determined amount when the Plan [was] modified to conform to ERISA." *Id.*

Van Billiard, on the other hand, analogizes this case to *Fin. Insts. Ret. Fund v. Office of Thrift Supervision*, 964 F.2d

10

142 (2d Cir. 1992) ("*FIRF*"), where the Second Circuit Court of Appeals held that a theoretical injury based on mismanagement of assets, of which some could be the plaintiffs', created constitutional standing. *FIRF*, 964 F.2d at 149. There, "the plaintiffs could point to an identifiable and quantifiable pool of assets to which they had colorable claims." *Kendall*, 561 F.3d at 121. Additionally, Van Billiard points out that the *Kendall* court recognized *FIRF*'s continued relevance when it stated that "[a] plan participant may allege a constitutional injury-in-fact based on a theoretical injury." *Id*.

This case is more like *FIRF* and the facts in *Kendall* are distinguishable from those here. Van Billiard has alleged the concrete injury of a 30-35% greater loss of Plan assets than would have occurred had the portfolio been properly diversified. Therefore, *Kendall*'s holding that a plaintiff cannot claim that an alleged breach of an ERISA-mandated fiduciary duty in and of itself constitutes an injury sufficient to confer constitutional standing is not applicable here as Van Billiard has alleged a loss of Plan assets. Additionally, as a Plan participant Van Billiard has a "colorable claim" to the Plan assets, which he alleges have decreased significantly as a result of Defendants' breaches of fiduciary duty.

Finally, "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal

11

rights, the invasion of which creates standing,'" *Warth v. Selding,* 422 U.S. 490, 501 (1975), a result "ERISA clearly accomplishes. . . ." *FIRF*, 964 F.2d at 147 (citing 29 U.S.C. Section 1132(a) (1998)). Thus, Van Billiard meets Article III standing requirements.

As Van Billiard meets Article III standing requirements and alleges sufficient facts to state a claim upon which relief may be granted, the Court denies the Motion to Dismiss Count I.

D. <u>Failure to State an ERISA Claim in Count II</u>

To establish whether Count II meets the *Twombly* plausibility standard noted above, it is essential to understand the requirements of each section of ERISA at issue. ERISA Section 404(a)(1)(A) provides that a

> fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA].

29 U.S.C. § 1104(a)(1). Section 406(b) provides that

> [a] fiduciary with respect to a plan shall not--(1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interest of its participants or beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b). Finally, Section 405(a) of ERISA deals with circumstances where a fiduciary may be liable for participating

in, concealing, enabling, or failing to make efforts to remedy another fiduciary's breach. 29 U.S.C. § 1105(a). ERISA "provides that not only the persons named as fiduciaries by a benefit plan, see 29 U.S.C. § 1102(a), but also anyone else who exercises discretionary control or authority over the plan's management, administration, or assets, see § 1002(21)(A), is an ERISA 'fiduciary.'" *Mertens v. Hewitt Assocs.*, 502 U.S. 248, 262 (1993).

Van Billiard has alleged that by using the "retroactive valuation date" that was in the Plan when Defendant Gill cashed out, he took a much greater distribution amount than he would have received had Defendants employed the amended Plan valuation date. Because of Defendant Gill's role as a fiduciary, Van Billiard argues Defendants thereby violated Sections 404(a)(1)(A), 406(b), and 405(a) of ERISA because their actions violated the duty to operate the Plan in the interest of the Plan and Plan participants as a whole.

Van Billiard has pled sufficient facts to state a claim under these provisions. In the amended complaint, Van Billiard alleges that

> [w[hen Defendant Gill took his pension distribution in August 2008, the Defendants knew that Defendant Gill valued his pension distribution amount based on the "retroactive" December 31, 2007 valuation date and . . . knew that they were on the verge of amending the Plan by changing the "retroactive valuation date" provision to preclude participants from "reaching back" in time to value the Plan and to value their own distribution amounts at a potentially

higher amount.

(Am. Compl. ¶ 25.)  ERISA was created to address inequitable favoring such as that alleged here.

> ERISA establishes both a duty of loyalty and a duty of care. The Act's legislative history indicates that the "crucible of congressional concern was the misuse and mismanagement of plan assets," particularly self-dealing by plan managers.

*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 141 n.8 (1985)).  It is this sort of concern about self-dealing by those with discretionary control over the Plan that forms the basis of Van Billiard's allegation in Count II.

Defendant Gill's cashing out and the subsequent change in the valuation date make plausible rather than just possible, as *Twombly* requires, the allegation that Defendants "favored [Defendant Gill] at the expense of other Plan participants," *Id.*, and acted otherwise than "with an eye single to the interest of the participants and beneficiaries." *Donovan v. Bierwirth*, 680 F.2d 263, 271 (2d Cir. 1982); *see also* 29 U.S.C. § 1104(a)(1).

Finally, Defendants allege that Count II fails to state a claim upon which relief may be granted because employers are acting as "settlors" rather than fiduciaries when they modify plan terms and the actions of a settlor cannot form the basis of an ERISA *fiduciary* breach claim.  "Settlor" is not defined statutorily, but its bounds have been explored in case law.  For example, "[p]lan sponsors who alter the terms of a plan do not

14

fall into the category of fiduciaries" but are instead acting as settlors. *Crowley v. Corning, Inc. Investment Plan*, 234 F. Supp. 2d 222, 228 (W.D.N.Y. 2002). "Employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995). "When employers undertake those actions, they do not act as fiduciaries." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). Here, Count II in fact challenges the act of allowing Defendant Gill to cash out, not the Defendants' act of amending the Plan or the timing of the amendment to the Plan's "valuation date," and therefore Van Billiard's claims challenge a fiduciary rather than settlor function. For all of these reasons, the Court denies the Motion to dismiss Count II.

    E.  <u>Failure to State an ERISA Claim in Count III</u>

Count III is essentially a remedy presented as a claim, and it serves no function that is not served by the requests Van Billiard makes in Paragraph B of his Prayer for Relief. Thus, the Court dismisses Count III noting that, if it deems such relief appropriate, the Court may still grant equitable remedies pursuant to ERISA § 502(a)(3).

III. <u>Conclusion:</u>

For the foregoing reasons, the Defendant's Motion to Dismiss (Doc. 29) is DENIED with respect to Counts I and II and GRANTED

with respect to Count III.

Dated Burlington, in the District of Vermont, this 3rd day of December, 2009.

/s/ William K. Sessions III
William K. Sessions III
Chief Judge